IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LILY V. AVALOS,<br><br>        Plaintiff,<br>   v.<br><br>UNIVERSITY OF SAN FRANCISCO, SCHOOL OF NURSING AND HEALTH PROFESSIONS (USF), a private university; PATRICIA LYNCH, Associate Dean; MARY SEED, Department Chair; JOAN MERSCH, Clinical Professor; STANFORD HOSPITAL AND CLINICS; a corporate entity of unknown form; and DOES 1 through 50, inclusive,<br><br>        Defendants.<br>_____ / | Case No. C 12-5290 RS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Lily Avalos contends that she was discriminated against on the basis of her learning disabilities while attending the Clinical Nurse Leader graduate program at the University of San Francisco (USF), School of Nursing and Health Professions. Avalos alleges that while participating in a clinical practice lab at Stanford Hospital, USF Clinical Professor Joan Mersch refused to accommodate her disabilities, which ultimately led to her dismissal from the graduate program. Pertinent to this motion, Avalos brings Fair Employment and Housing Act (FEHA) claims for relief

against Defendants University of San Francisco and Stanford Hospital and Clinics for wrongful termination in violation of public policy based on discrimination, failure to take reasonable steps to prevent discrimination, retaliation, failure to accommodate a disability, failure to engage in the interactive process, and harassment. *See* Cal. Govt. Code § 12900.

USF and Stanford Hospital each assert an affirmative defense for all FEHA claims stating that Avalos was not an employee of either of them. Avalos moves for partial summary judgment on these affirmative defenses. She claims that she is entitled to judgment as a matter of law that she was an employee of either or both USF and Stanford Hospital.[1] For the following reasons, Plaintiff's motion for partial summary judgment will be denied.

## II. BACKGROUND

Avalos was enrolled in the Clinical Nurse Leader graduate program at the University of San Francisco. Upon enrolling in the program, Avalos met with Student Disability Services (SDS), where she requested certain accommodations for various learning disabilities. SDS provided Avalos with a letter for her to give to her professors listing a number of recommended accommodations.

Avalos took two types of classes in the nursing program: didactic courses and clinical courses. Since USF does not have its own hospital, it contracts with local hospitals to act as hosts for clinical courses. The courses are taught and supervised by USF faculty members. During the fall semester of 2010, Avalos was enrolled in clinical course NURS 619 – Medical Surgical One Clinical Lab. USF assigned Avalos to the Stanford Hospital location for the course. The class met once per week on Mondays and was led by Professor Joan Mersch. Professor Mersch is a faculty member and employee of USF; she is not employed by Stanford Hospital. During the Monday clinical sessions, Avalos interacted with patients at Stanford Hospital and performed various nursing related functions: changing IV bags, administering medication, and utilizing the electronic medical record system. At all times, students were supervised by either Professor Mersch or a nurse preceptor: Stanford-Hospital-employed nurses who were specially certified to work with student

---

[1] In the alternative, Avalos asks the Court, pursuant to F.R.C.P. 56(g), to treat the material fact of whether she is an employee of either party as established. Since the motion for partial summary judgment on that issue will be denied, this fact cannot be treated as established.

nurses. Students were also required to review patient records at Stanford Hospital on Sundays in preparation for class. The parties agree that students did not receive any monetary compensation from USF or Stanford Hospital while participating in the NURS 619 course.

During the NURS 619 orientation, Avalos told Professor Mersch about her learning disability and furnished the SDS prepared accommodations letter. Professor Mersch, allegedly, would not accept the letter and refused to make accommodations for Avalos consistent with the SDS recommendations. Avalos claims that Professor Mersch then harassed and intimidated her because of her learning disability. Avalos ultimately received a failing grade in NURS 619. The following year, Avalos received another failing grade in a separate course. In January 2012, Avalos was disqualified from the nursing program because of the two failing grades on her transcript. Avalos argues that Professor Mersch's conduct constitutes discrimination and harassment because of her disability in violation of FEHA. USF and Stanford Hospital argue that Avalos is not entitled to protection under FEHA because she was not employed by either party.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id.* at 322-23. A party may move for partial summary judgment on only a "part of each claim or defense." Fed. R. Civ. P. 56(a).

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly

supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV. DISCUSSION

### A. Employee Definition Under FEHA

Under FEHA, it is unlawful for an employer to "discharge [a] person from employment [or] . . . discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" because of her disability. *See* Cal. Gov. Code § 12940(a). "In order to recover under the discrimination in employment provisions of FEHA, the aggrieved plaintiff must be an employee" of the defendant company or organization. *Shephard v. Loyola Marymount Univ.*, 102 Cal. App. 4th 837, 842 (2002). The FEHA, however, does not clearly define who is considered an employee; instead, FEHA simply lists individuals who cannot be considered employees: people employed by parents, spouses, or children and people working under a special license in a nonprofit

sheltered workshop or rehabilitation facility. *See* Cal. Govt. Code § 12926(c). At the most basic level, "FEHA requires 'some connection with an employment relationship,' although the connection 'need not necessarily be direct.'" *Vernon v. State*, 116 Cal. App. 4th 114, 123 (2004) (citing *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir.1980). This lack of definitional clarity has led courts to look to other statutes and regulations to determine the appropriate test for identifying employees. *See Mendoza v. Town of Ross*, 128 Cal. App. 4th 625, 632-33 (2005) ("Because the antidiscrimination objectives and relevant wording of title VII of the Civil Rights Act of 1964 are similar to those of the FEHA, California courts often look to federal decisions interpreting these statutes for assistance in interpreting FEHA" (internal quotation marks omitted).); *Vernon*, 116 Cal. App. 4th at 124-26 (Title VII).[2]

Title VII-based tests defining what qualifies as an employment relationship require consideration of the "'totality of circumstances' that reflect upon the nature of the work relationship of the parties, with emphasis upon the extent to which the defendant controls the plaintiff's performance of employment duties." *Vernon*, 166 Cal. App. 4th at 124 (citing *Lambertsen v. Utah Dept. of Corrections*, 79 F.3d 1024, 1028 (10th Cir. 1996); *see also Graves v. Lowery*, 117 F.3d 723, 729 (3rd Cir. 1997) ("[T]he precise contours of an employment relationship can only be established by a careful factual inquiry.").[3] In addition, California courts have relied on interpretations of Title VII for the proposition that in order to be considered an employee under FEHA, the plaintiff must prove she was hired by the employer. *See Mendoza*, 128 Cal. App. 4th at 625. "[T]o satisfy the hiring prong, a purported employee must establish the existence of

---

[2] Avalos alleges discrimination based on disability. The Americans with Disabilities Act defines employee as does Title VII: "[A]n individual employed by an employer." *See* 42 U.S.C. § 12111.

[3] The different factors that should be taken into account when assessing the relationship of the two parties are: payment of salary or other employment benefits; ownership of the equipment needed to perform the job; location where the work is performed; obligation of training; authority of defendant to hire, transfer, promote, discipline, or discharge the employee; authority to establish work schedules and assignments; determination of compensation; skill required to perform the work and the extent to which it is done under the direction of a supervisor; whether the work is part of defendant's regular business; and duration of the relationship. *Vernon*, 116 Cal. App. 4th at 124.

remuneration, in some form, in exchange for work." *Id.* at 636.[4] Remuneration does not have to take the form of a direct salary but instead, substantial indirect compensation can qualify. *Id.* Indirect compensation, however, cannot merely be incidental to the activity performed. *Id.* Examples of benefits that might qualify as substantial indirect compensation are: disability pensions, survivors' benefits, group life insurance, and scholarships for children of deceased workers. *Id.*

Avalos urges the Court to adopt a broader interpretation of "employee" under FEHA. Avalos points to *Shephard*, where the court relied on "persuasive decisional authority" in the workers' compensation liability scheme to determine the definition of "employee" under FEHA. *See Shephard*, 102 Cal. App. 4th at 842. The *Shephard* court determined that because the Workers' Compensation Act (WCA) and FEHA were both enacted to promote the welfare of employees, the statutes must be harmonized insofar as possible. *Id.* at 845-46 (citing *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.*, 19 Cal. 4th 1182, 1195 (1999)). Thus, Avalos identifies two Workers' Compensation cases that stand for the proposition that unpaid student nurses and student medical assistants, working in hospital settings as part of their degree programs, are employees of the hospital under the WCA. *See Barragan v. Workers' Comp. Appeals Bd.*, 195 Cal. App. 3d 637 (1987); *Anaheim Gen. Hosp. v. Workmen's Comp. Appeals Bd.*, 3 Cal. App. 3d 468 (1970).

These cases both focus on the broad coverage supplied by workers' compensation protections, particularly, Labor Code § 3357, which states, "[a]ny person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee." *See Anaheim*, 3 Cal. App. 3d at 472-73; *Barragan*, 195 Cal. App. 3d at 642. In order to rebut this presumption a defendant can show that no employment contract existed between the parties by demonstrating a lack of (1) consent of the parties, (2) consideration for the services rendered, and (3) control by the employer over the employee. *See Barragan*, 195 Cal. App. 3d at

---

[4] In *Mendoza*, the court also looked to the definition of employee expressed in the regulations enacted by the Department of Fair Employment and Housing. *Id.* Those regulations define an employee as "[a]ny individual under the direction and control of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written." *Id.* (citing Cal. Code Regs., tit. 2, § 7286.5, subd. (b)). The court, however, held that even if the plaintiff could establish that he was working under contract, as an apprentice, or pursuant to an appointment, because he was not receiving remuneration for his services, he could not be an employee under FEHA. *Id.* at 637.

643. On the issue of consideration, the courts recognized that while "a person providing purely gratuitous voluntary service is not an employee . . . it has also long been a rule that for purposes of workers' compensation, the consideration or compensation for an employment contract need not be in the strict form of wages or money." *Id.* at 646; *Anaheim*, 3 Cal. App. 3d at 473 ("The form of remuneration is not controlling. . . . Vocational instruction, standing alone, has been regarded as sufficient consideration to uphold the existence of a contract." (internal citations and quotation marks omitted)). Further, the courts determined that since the services being performed by the students were rendered on the hospital premises and hospital staff supervised the students, the hospital had exclusive control and direction of the student's duties. *See Barragan*, 195 Cal. App. 3d at 646.

Such a broad interpretation of employee for FEHA purposes is a stretch too far. While harmonizing the FEHA with the WCA might have some appeal from a policy perspective, in this particular context, Title VII is the proper legal analog. The WCA affords broad coverage to individuals operating in employment settings by adopting a no-fault liability system and presuming that a person injured on the job is an employee. *See* Cal. Labor Code § 3357; *Matea v. Workers' Comp. Appeals Bd.*, 144 Cal. App. 4th 1435, 1442-43 (2006). FEHA does not contain such expansive provisions. Where the WCA was adopted to encourage employers to provide a safe working environment and bear the costs of failing to do so, FEHA was adopted to help eradicate discrimination in the workplace, as was Title VII. *See* Cal. Govt. Code § 12920; *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 812 (2001); *Matea*, 144 Cal. App. 4th at 1442-43. Therefore, in analyzing Avalos' contention that, as a matter of law, she was an employee of the University of San Francisco or Stanford Hospital, the applicable model is the Title VII-based tests that focus on the extent to which the organization controlled and directed the means and manner of Avalos' work and whether she received sufficient remuneration to qualify as an employee of either organization.

B. University of San Francisco

Avalos argues the undisputed facts prove she was an employee of USF during the time period that she was taking classes towards her nursing degree. Yet, Avalos identifies no cases supporting the proposition that a student is an employee of her school under FEHA.

Under the framework outlined above, Avalos would, at a minimum, need to demonstrate that she received substantial remuneration from USF in order to establish that she was an employee of that institution. Receiving training or educational credit is not considered remuneration under this framework. *See Mendoza*, 128 Cal. App. 4th at 636 ("If not direct salary, substantial benefits which are not merely incidental to the activity performed," like sick pay, vacation or health insurance, must be plead to establish an employment relationship.). Further, even graduate students working as student researchers or graduate student teachers, who receive monetary compensation from the school where they work, often do not qualify as employees, because the performance of those services was incidental to the educational program. *See Pollack v. Rice Univ.*, 28 Fair. Empl. Prac. Cas. (BNA) 1273 (S.D. Tex. 1982) (holding that Title VII does not apply to discrimination in admissions to a graduate program because the individual will not perform any services during the program, even if compensated monetarily, that are not "completely incidental to the scholastic program").

Here, Avalos does not contend she was compensated by USF in any way other than by receiving educational training and credits towards her degree. She does not allege that she received a salary, retirement benefits, or anything similar. *See Mendoza*, 128 Cal. App. 4th at 637 (holding that where plaintiff "concedes that his position was unpaid, and does not allege that he received any other type of financial benefit he might have received, such as health, insurance, or retirement benefits," he is not an employee under FEHA). Accordingly, Avalos has not demonstrated by undisputed material facts her status as an employee of USF.

Avalos erroneously argues that she is entitled to the protections of FEHA because the Board of Registered Nursing, which provides licensing for nurses, allows testing accommodations for applicants pursuant to the requirements of FEHA, a fact of no apparent relevance. USF does not provide any credentialing services that are required for employment. Although Avalos would receive a nursing degree from USF upon completion of the program, this degree does not allow her to practice nursing. Whether the Board of Registered Nursing is required to follow FEHA in the administration of licensing examinations is inapposite to this motion.

### C. Stanford Hospital and Clinics

Avalos contends that Stanford Hospital was her joint or indirect employer, because the NURS 619 clinical lab class was taught on the hospital premises, she interacted and worked with Stanford Hospital patients, and at various points during the performance of her duties she was supervised by Stanford Hospital nurse preceptors. Avalos acknowledges she received no financial benefit from working at Stanford Hospital. In addition, Avalos does not argue that Stanford Hospital paid her, provided health insurance or life insurance, or provided retirement benefits.[5] Instead, the benefit that Avalos received was skills training and course credit needed to complete her graduate degree. Those benefits are non-monetary and incidental to the activity Avalos performed at the hospital in order to complete her educational program. *See* Mendoza, 128 Cal. App. 4th at 636. This lack of remuneration alone, likely serves to preclude Avalos' from attaining employee status.

Additionally, however, Stanford Hospital's degree of control over the means and manner of the work performed is disputed. Avalos contends that most of her work was supervised by nurses employed by Stanford Hospital. She further alleges that the skills she performed were based on the needs and requirements of the Stanford Hospital patients and staff. On the other hand, Stanford Hospital argues that Avalos was supervised by USF Professor Mersch, who was not a hospital employee. Additionally, they argue that Avalos was assigned nursing tasks based on an established USF curriculum and was subject to the USF Student Handbook and Policies, as opposed to Stanford Hospital personnel policies. *See Vernon*, 166 Cal. App. 4th at 127 (holding that plaintiff was not an employee of the State, in part, because he was not covered by State implemented personnel policies and the State did not supervise his employment duties). The amount of control and supervision that Stanford Hospital exercised over Avalos is a genuine dispute on this record as to the material fact of control over work performance that is a critical factor in establishing the presence of an employment relationship.

---

[5] Avalos contends that because Stanford required that she pay workers' compensation insurance premiums in order to participate in the clinical lab class at Stanford Hospital, they assented to her status as an employee. As previously discussed in Part IV.A., the workers' compensation payment and protection scheme is not dispositive here.

Finally, Avalos contends that the inclusion of "apprentices" in the definition of individuals protected by FEHA entitles her to judgment that she is an employee of Stanford Hospital. *See* Cal. Code Regs., tit. 2, § 7286.5, subd. (b) ("Any individual under the direction and control of an employer under any appointment or contract of hire or apprenticeship" is considered an employee under FEHA.). Avalos' contention fails because she cannot undisputedly establish on the facts here that Stanford Hospital directed or controlled her activities, which is required by the clear wording of the regulation. In addition, Avalos' broad reading of the word "apprenticeship" is contradicted by the definitions provided in the regulations. There, "Apprenticeship Training Program" is defined as "[a]ny apprenticeship program . . . subject to the provision of Chapter 4 of Division 3 of the California Labor Code, Section 3070, et. seq." Cal. Code Regs., tit. 2, § 7286.5, subd. (i). There is no indication that Stanford Hospital operates a qualifying apprenticeship training program under the regulations, thereby precluding application of apprentice status to Avalos.[6]

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is denied.

IT IS SO ORDERED.

Dated: 4/4/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[6] Further, the master's degree program at USF is not recognized as an apprenticeship training program, precluding the argument that Avalos is an apprentice because USF administers the apprenticeship program, while Stanford simply hosts the apprentices.